## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03148-CMA-KMT

Krystal Poliquin, and
Strength Sensei, Inc., a Colorado corporation,

      Plaintiffs,

v.

Strength Sensei Legacy, Inc., a Colorado corporation,
Knockout Services, Inc., a Colorado corporation,
Scott Macon,
Karin Macon-Luetzer, and
Carlos Castro Torres,

      Defendants.

---

## RESPONSE IN OPPOSITION TO MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

Defendants Strength Sensei Legacy Corp., erroneously identified above, Knockout Services, Inc., Scott Macon, and Karin Macon-Luetzer,[1] through their counsel, submit their response in opposition to Plaintiffs' motion for temporary restraining order [ECF No. 2] and motion for preliminary injunction [ECF No. 3], and memorandum of law [ECF no. 2-1 and ECF no. 3-2] as follows[2]:

### INTRODUCTION

Plaintiffs' emergency motion for temporary restraining order and motion for preliminary injunction

---

[1] As of this response, Defendant Carlos Castro has not yet been served with the motions, a summons, or Complaint.

[2] Because the Court has combined these motions for judicial economy, the Response addresses the motion for preliminary injunction, which is based on the same memorandum of law [ECF no. 2-1 and ECF no. 3-2] to support both motions.

both filed November 5, 2019, should be denied because they lack factual support, and Plaintiffs cannot

demonstrate any irreparable harm to justify the extraordinary remedy of preliminary injunctive relief, which

the right to relief must be clear and unequivocal. Both motions, which are explained in the memorandum of

law, are based on a misapprehension of the facts. Contrary to Plaintiffs' claims, Defendants did not take

over the social medial and online web hosting accounts used by Charles Poliquin and his company Strength

Sensei, Inc. because, as demonstrated by the Declaration of Karin Macon, Defendant Knockout Services,

Inc. and before that Defendant Karin Macon have owned since April 2013 the domain strengthsensei.com

and leased it to Strength Sensei, Inc., which did not incorporate until September 2013. Moreover, as

demonstrated by the Declaration of Patrick Gagnon, neither Charles Poliquin nor Strength Sensei, Inc.

owned any of the social media accounts; they were leased to him by Patrick Gagnon and his company. Nor

are Defendants using or selling any of Strength Sensei, Inc.'s "intellectual property." As Karin Macon's

declaration makes clear, Defendants returned all of the property, records, and assets owned or controlled by

Charles Poliquin or Strength Sensei, Inc. no later than May 9, 2019. (Defendants initially agreed with the

Estate to continue the business from Charles Poliquin's passing in September 2018 until April 2019.)

Plaintiffs cannot identity what this intellectual property is, how it is being used, and why it

constitutes an unlawful misappropriation. Plaintiffs provide no evidence, nor can they, that "it has been

discovered that the assets of Strength Sensei have been appropriated, used, or wasted." [ECF 3-2, at 3].

They claim, without support, that "Defendants have (without consent from [Krystal] Poliquin) taken over

the websites, trademarks, and company name of Strength Sensei." *Id.* As noted above, the website at issue,

strengthsensei.com, was at all times owned and controlled by Karin Macon and then Knockout Services.

And only Knockout Services owns a federal trademark of the name Strength Sensei and its federal

application for the logo consisting of Japanese characters is pending. Plaintiffs also complain that

Defendants have interfered with an online membership service, the Dojo of Strength, and failed to turn over

2

the software used to run it. *Id.* at 3-4. But the evidence submitted by Karin Macon's declaration is that Defendants turned that content, software, and access to the Dojo of Strength over to the Estate no later than May 9, 2019, and have done nothing to interfere with that access, use, or any customers of that service. There is, moreover, no evidence that "Defendants are not providing access to records and accounts needed to run Strength Sensei and preserve its assets, including domain name registration, website hosting, social media accounts, marketing, and customer management, and point of sales systems." *Id.* at 4. Plaintiffs cannot identify a single asset or record or system that Defendants failed to turn over. Plaintiffs are not entitled to the domain name strenthsensei.com for the simple reason that neither Strength Sensei, Inc. nor Charles Poliquin ever purchased, owned, or registered the domain name. Finally, Defendants are not unlawfully using Charles Poliquin's likeness; their company Strength Sensei Legacy Corp. makes clear that they are compromised of Charles Poliquin's former team and their objective is to continue his legacy. There is no consumer confusion that Strength Sensei Legacy Corp. is related in any way to Strength Sensei, Inc. A visitor accessing strengthsensei.com, which is now leased by Knockout Services to Strength Sensei Legacy Corp., can see that the company is called Strength Sensei Legacy and "[t]he team's mission is to keep Charles' legacy alive for future generations." ([www.strengthsensei.com](www.strengthsensei.com), visited December 3, 2019). Plaintiffs have all of the assets, records, content, and membership lists of Strength Sensei, Inc., and there is nothing to prevent them from operating Strength Sensei, Inc. on their own social media and website.

Nevertheless, without sufficient evidence, factual support, or a showing of irreparable harm, Plaintiffs improperly seek injunctive relief based on the following seven claims: (1) misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"), and the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101 et seq. ("CUTSA"); (2) intentional interference with contractual obligations; (3) trademark infringement and unfair competition under the common law of Colorado; (4) trademark infringement, unfair competition, false designation of origin under

3

15 U.S.C. § 1125(a); (5) violation of the Colorado Consumer Protection Act; (6) unjust enrichment; and (7) conversion and civil theft. There is no evidence to support any of these claims; nor is there a showing of irreparable harm.

Plaintiffs seek to enjoin Defendants from using a website that Knockout Services and Karin Macon have purchased, registered, and owned since before Strength Sensei, Inc. was incorporated; from using the name Strength Sensei for which Knockout Services has obtained a federal trademark from the United States Patent and Trademark Office (USPTO) and the logo of Japanese characters, the application for which is pending with the USPTO; from Strength Sensei Legacy Corp. from using its own name to conduct any business, including use of the website Knockout Services owns and leases to Strength Sensei Legacy Corp. *See* Proposed Order [ECF no. 3-1]. The requested relief is extraordinary, is unwarranted, and would disturb the status quo by, among other things, requiring Knockout Services to forfeit a website it has always owned (and only leased to Strength Sensei, Inc.) and relinquish a federally protected trademark that Knockout Services owns as the registrant from the USPTO.

Plaintiffs' entire case for a preliminary injunction is based on a fundamental misconception of the factual background. Defendants do not possess any intellectual property, confidential information, trade secrets, or property of Strength Sensei, Inc. or Charles Poliquin. Nor did Defendants take control of the domain or software used to operate the Dojo of Strength. The domain has always been owned by Karin Macon and Knockout Services, not Strength Sensei, Inc. The online subscription for the Dojo of Strength and the software used to run it were turned over to the Estate no later than May 9, 2019. Plaintiffs received all the content, records, and property for Strength Sensei, Inc. by May 9, 2019 and now, in November 2019, claim irreparable harm. Rather, this effort is an improper attempt to undercut a competitor who can provide services more effectively and competently. Plaintiffs cannot satisfy the clear and unequivocal right to relief.

## FACTUAL BACKGROUND

**Background**

Strength Sensei Legacy Corp. ("Legacy") is comprised of members of Charles Poliquin's former team, including Karin Macon and Carlos Castro. *See* Declaration of Karin Macon, EX 1, ¶¶ 5, 10. Legacy makes clear to the public that it is not Strength Sensei, Inc. ("SSI") and that it is Charles Poliquin's former team and operating a new company *to honor his legacy*. *Id.* ¶ 11. Legacy uses our its own website, has its own customers, and produces its own content. *Id.* No defendant, including Legacy, retained or otherwise interfered with or prevented access to anything owned by Charles Poliquin or SSI. *Id.* All assets, property, records, and content owned by Charles Poliquin or SSI were turned over to the Estate of Charles Poliquin *no later than May 9, 2019*. *Id.* ¶ 12. Legacy then had no access to any of the assets, property, records, including financial and customer lists, or content. *Id.*

Since 2013, Karin Macon has worked with Charles Poliquin as an independent contractor providing customer services, marketing and general business operations to him and then to his company SSI. *Id.* ¶ 3. The original team working with Charles Poliquin was Karin Macon, Carlos Castro, Patrick Gagnon, and Scott Macon. *Id.* ¶ 5. Before Charles Poliquin's death in September 2018, SSI had no employees other than Charles Poliquin, until in 2018 when it hired a bookkeeper. *Id.* ¶ 6. SSI used independent contractors for various services. *Id.* None of the social media—including strengthsensei.com—were ever owned or controlled by Charles Poliquin or SSI. *Id.* ¶ 9.

**Domain Name Ownership**

Instead, on April 5, 2013, before Charles Poliquin incorporated SSI, Karin Macon purchased and registered the domain name strengthsensei.com. *Id.* ¶¶ 8, 13; *see also* EX 2. She later updated the registration to her company name Knockout Services, Inc. EX. 1 ¶ 13. This domain has been under the control and ownership of Karin Macon and then Knockout Services

5

at all times. *Id.* ¶ 14. Karin Macon leased the domain to SSI, through an oral agreement with

Charles Poliquin, for a monthly fee beginning on or about January 2, 2014, but Karin Macon

always retained ownership and control of the domain. *Id.* ¶¶ 17-18. The Estate's successor

personal representative, ANB Bank, acknowledged this ownership of strengthsensei.com in a

proposed April 2019 offer, which was reviewed by Plaintiffs, to sell certain assets of SSI to

Karin Macon, her husband Scott Macon, and Carlos Castro. *Id.* ¶ 19; EX 3, at p. 2, ¶ 3. After

Charles Poliquin passed, Knockout Services leased the website to Legacy. EX 1, ¶ 20.

**Continuing Business for Estate in Interim**

When Charles Poliquin died unexpectedly in September 2018, the initial personal

representative, Charles Poliquin's sister, requested that his team help her with continuing the

business, which they did. *Id.* ¶¶ 29-34. They hired Carlos Castro to teach the courses that Charles

Poliquin formerly taught. *Id.* ¶ 31. In or around December 2018, ANB Bank took over as the

successor personal representative of the Estate. *Id.* ¶ 31. In March 2019, ANB sought to sell

certain assets of SSI; Karin Macon, Scott Macon, and Carlos Castro offered to purchase the

assets actually owned by SSI or Charles Poliquin, but after the bank accepted the offer and then

changed some terms, the parties, by mid-April 2019, were no longer negotiating. *Id.* ¶¶ 35-39.

**Return of all assets, property and content of SSI and Charles Poliquin to the Estate**

Beginning in mid-April 2019, the Legacy team began returning all the assets, content,

records and property of SSI and Charles Poliquin to the Estate, which was completed by May 9,

2019. *Id.* ¶¶ 40-44. Among other things, Legacy turned over to the Estate the Dojo of Strength, a

sub-domain of strengthsensei.com, which is SSI's online membership subscription service. *Id.* ¶¶

21-22. Members access the Dojo of Strength for various content, courses, and teachings in

exchange for a monthly or annual subscription. *Id.* Legacy also turned over the Infusionsoft

customer relationship management software used to run SSI's business (marketing, sales, emails, customer contacts, billing, etc.) and to operate the Dojo of Strength, to which the Estate confirmed they now had access as of April 27, 2019. *Id.* ¶¶ 23-24. All videos belonging to Charles Poliquin or SSI were turned over to the Estate no later than May 9, 2019, the delay attributable to waiting for the Estate to provide a Dropbox location. *Id.* ¶¶ 27, 44. Another program available on the website was for members to access the Metabolics Analytics/Training Software, which was owned only by Carlos Castro's company. *Id.* ¶¶ 25-28.

In summary, Defendants undertook the following with respect to all the content, property, and records belonging to SSI or Charles Poliquin:

- No later than May 9, 2019, we returned all of the property, records, and content owned or created by Charles Poliquin and Strength Sensei, Inc. to the Estate. We returned all of the articles on the website that Charles wrote, the Dojo material he created, and his books. Anything not owned by Charles Poliquin or Strength Sensei, Inc. was maintained.

- We removed all of the content that was owned or created by Charles Poliquin and Strength Sensei, Inc. from the website strengthsensei.com and returned all of it to the Estate.

- On April 26, 2019, we transferred to the Estate the Infusionsoft customer relationship management software that contained all of Strength Sensei Inc.'s marketing, customer lists, and emails. Once we transferred over access to Infusionsoft, we no longer had any access or control over this software, marketing, or customer information.

- No later than May 9, 2019, we provided to the Estate all of the information relating to the Dojo of Strength membership subscription, including content, data, materials, customer lists, and billing records. The Estate had all of the information for them to track the membership, payments, and contact information.

- We attempted to provide this information on April 30, 2019, but we were waiting for the Estate to provide us with a Dropbox location to upload the materials.

- We did nothing to destroy or otherwise interfere with access to the Dojo of Strength or the content on it. Before we shut down the Dojo of Strength access on the website owned by Knockout Services, Inc., we notified the Estate that if we did not reach an agreement to purchase certain assets, then the Dojo of Strength customers would lose access. We were told by the Estate not to contact members and we complied with that instruction.

●      We did not turn off or otherwise prevent access to the Dojo of Strength. The software program Infusionsoft is used to run the Dojo of Strength, and, as noted above, we turned Infusionsoft over to the Estate by April 30, 2019 so that the Estate could operate the Dojo of Strength on its own website.

●      All content and property belonging to Charles Poliquin or Strength Sensei, Inc. was therefore turned over and made available to the Estate no later than May 9, 2019.

*Id.* ¶¶ 40-44.

**Trademark Registration with the USPTO**

During Charles Poliquin's life, neither the name nor the logo was used in commerce through advertisement or sale of items with the name or logo. *Id.* ¶ 49. Any items were only given away at classes or events. *Id.* Beginning in April 2019, however, Legacy began using as the first time in commerce the Strength Sensei name and the logo (Japanese characters) on items that were advertised and sold on the website—with all profits going to non-profits. *Id.* ¶¶ 50-51. Given this use in commerce, on advice of its attorney, Knockout Services filed two separate applications for trademarks with the USPTO: the Strength Sensei name and the name with the logo. *Id.* ¶ 52-54; *see also* EX. 4 and 5. The Estate then attempted to file an application for the name Strength Sensei, but it was rejected by the USPTO. *Id.* at ¶ 55. On August 6, 2019, the USPTO issued to Knockout Services a certificate of registration for the name Strength Sensei. EX. 1, ¶ 56; *see also* EX. 6. The application for the logo is pending, however, because of an objection by the Estate, which obtained an extension until December 7, 2019 to file it. EX. 1 ¶ 57.

**Other Social Media Sites**

Patrick Gagnon developed, created, and has owned the social media sites for Facebook, Instagram, and YouTube and leased them to SSI, and they were never controlled or owned by anyone other than him or his company. *See* Declaration of Patrick Gagnon, EX 7, ¶¶ 3-6; 9. Between in or around August 2013 and until on or about April 22, 2019, Gagnon and his company leased those social media sites to SSI

through an oral lease agreement with Charles Poliquin in exchange for monthly payments. *Id.* ¶¶ 5-6. Beginning on or about April 23, 2019, his company leased those sites and accounts to Legacy in exchange for a monthly fee. *Id.* ¶ 7. And the accounts clearly identify the new company as Strength Sensei Legacy, which is intended to continue the mission of Charles Poliquin. *Id.* ¶ 8.

## LEGAL STANDARD

"To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)). According to the Tenth Circuit, "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted). "Granting such 'drastic relief' is the 'exception rather than the rule.'" *Dalkita, Inc. v. Distilling Craft, LLC*, 356 F. Supp. 3d 1125, 1131 (D. Colo. 2018) (quoting *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989) and *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)). *See also United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir.1989)("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established."). The purpose "of preliminary injunctive relief is to assure that the non-movant does not take unilateral action which would prevent the court from providing effective relief to the movant should he ultimately prevail on the merits." *Bray v. QFA Royalties LLC*, 486 F. Supp. 2d

1237, 1244 (D. Colo. 2007).

As a federal court (Judge Brimmer) in this district recently observed in denying a preliminary injunction, "because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered." *Dalkita*, 356 F. Supp. 3d at 1131 (quoting *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017)). As the court noted:

> Because "[t]he purpose of a preliminary injunction is not to remedy past harm," *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005), the irreparable harm inquiry focuses on whether the plaintiff has demonstrated a "significant risk" that he or she will suffer irreparable injury before a court can render a final decision on the merits of the case. *See id.; Greater Yellowstone Coal.*, 321 F.3d at 1258. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

*Id.* (Emphasis added). The movant "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier*, 427 F.3d at 1267 (internal citation omitted). According to the Tenth Circuit and the Supreme Court, "A preliminary injunction is an extraordinary remedy never awarded as of right." *First W. Capital Mgmt.*, 874 F.3d at 1141 (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)). And, "[d]emonstrating irreparable harm is 'not an easy burden to fulfill.'" *Id.* (quoting *Greater Yellowstone Coal.*, 321 F.3d at 1258). Even if a movant can show likelihood of success on the merits, a finding of no irreparable injury makes a preliminary injunctive relief improper. *Id.* at 1143.

The *Dalkita* court also noted that the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), "called into doubt the continued validity of a presumption of irreparable harm in intellectual property cases." *Dalkita*, 356 F. Supp. 3d at 1133. It stated, "The Court joins other courts in this district in finding that *eBay* abrogated the presumption of irreparable harm traditionally applied in trademark infringement cases." *Id.* at 1133 (citing *Greenway Univ., Inc. v. Greenway of Ariz., L.L.C.,* No.

11-cv-01055-CMA-KLM, 2011 WL 2669174, at *6 (D. Colo. July 7, 2011) (citing *eBay* in not applying a presumption of irreparable harm in a trademark lawsuit)). Similarly, the Tenth Circuit has held that neither the DTSA, 18 U.S.C. § 1836, nor CUTSA, Colo. Rev. Stat. § 7-74-101 et seq., permit a presumption of irreparable harm. *First W. Capital Mgmt.*, 874 F.3d at 1143.

Finally, Plaintiffs seek a disfavored injunction by, among other things, requesting that the Court force Knockout Services to relinquish ownership of the domain and alter the ownership of the trademark. The Tenth Circuit requires a heightened burden for such disfavored preliminary injunctions, which do not:

> merely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win. To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.

*Cent. Bancorp, Inc. v. Cent. Bancompany, Inc.*, 385 F. Supp. 3d 1122, 1135–36 (D. Colo. 2019) (quoting *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (citations and internal quotation marks omitted)).

## ARGUMENT

### A. Plaintiffs lack any evidence of any misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016 and the Colorado Uniform Trade Secrets Act.

To establish such a claim under the DTSA, a plaintiff must show: (1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means. See *Arctic Energy Servs., LLC v. Neal*, 2018 WL 1010939, at *2 (D. Colo. 2018). The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"; or the "disclosure or use of a trade secret" without the consent of the owner. 18 U.S.C. §§ 1839(5)(A)-(B). The DTSA defines "trade

secret" broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as (1) the owner of the trade secret has taken "reasonable measures to keep such information secret" and (2) such information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by," another person. 18 U.S.C. § 1839(3).

To prevail on a claim for misappropriation of trade secrets under Colorado law (CUTSA), a plaintiff must show: "(i) that he or she possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, and (iii) that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993) (cited in *zvelo, Inc. v. Akamai Techs., Inc.*, No. 19-CV-00097-PAB-SKC, 2019 WL 4751809, at *2 (D. Colo. Sept. 30, 2019)). CUTSA defines "trade secret" as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." Colo. Rev. Stat. § 7-74-102(4). To constitute a trade secret, "the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." *Id.*

This claim fails under both federal and state law for the simple reason that Plaintiffs have no evidence of either any "trade secret" or that Defendant misappropriated any trade secret. As made clear by the Declaration of Karin Macon (EX. 1), all of the content, property, records, and assets of SSI and Charles Poliquin were turned over to the Estate by May 9, 2019. Plaintiffs claim that the can "establish both actual and threatened misappropriation of its trade secrets by defendants. As set forth above, Defendants have taken control of the social media accounts, website access, membership lists, and the Dojo program." Memorandum of Law, ¶ 33. Both the Macon declaration and the Gagnon declaration, however, make clear

that the social media accounts and website were never owned or controlled by SSI; rather, these sites were simply leased by SSI. Moreover, Defendants returned all of SSI's content, records, and property, including its customer lists, to the Estate. Plaintiffs therefore cannot identify any material that constitutes a "trade secret"; nor can Plaintiffs demonstrate that any defendant misappropriated any trade secret.

**B. Plaintiffs have no evidence of any intentional interference with contractual obligations.**

Nor is there any evidence to support the claim that Legacy has "continued to intentionally and improperly interfere with the performance of contracts between Strength Sensei and third parties." *See* Memorandum, at ¶ 34. Plaintiffs' proffered support for this claim is the alleged interference with the Dojo of Strength subscription service. *Id.* ¶ 36. Contrary to the claim by Plaintiffs that "As part of their takeover of StrengthSensei.com, Defendants took control of the web domain and software that hosted the Dojo of Strength and its educational programing. They gained access to the membership lists, billing information, and content management system that Strength Sensei used to fulfil its obligations to Dojo of Strength members." *Id.* at ¶ 37. Karin Macon's declaration (EX. 1) makes clear that this program and all the software used to run it was turned over to the Estate no later than May 9, 2019.  Defendants have no access to the program, the customer list, or any of its records, and Defendants did nothing to impair Plaintiffs' use or access to the Dojo of Strength and Plaintiffs have no evidence to the contrary.

**C. Plaintiffs cannot establish any trademark infringement, unfair competition, or common law infringement.**

Trademark infringement is a type of unfair competition and "the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B), commonly known as section 43 of the Lanham Act." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008); *see also id.* (citing *Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477 (8th Cir.1967) ("Trademark infringement is but part of broader law of unfair competition; and facts supporting suit for infringement and one for unfair competition are substantially

identical.")). Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use in commerce of "any false designation of origin" that "is likely to cause confusion ... as to the origin ... goods." 15 U.S.C. § 1125(a)(1)(A). The Lanham Act provides a court with the power to grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). A party is required to show irreparable harm for a trademark infringement claim. *See First W. Capital*, 874 F.3d at 1142-43; *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008) (explaining that a movant must show that irreparable harm is likely, rather than possible). The elements of common law trademark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act. "Among other things, a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004) (affirming summary judgment for defendant because plaintiff could not show a protectable interest in the mark).

Plaintiffs cannot establish a trademark infringement or unfair competition claim under federal or common law. To establish a claim for trademark infringement and false designation of origin of an unregistered mark under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must show that: (1) they have a protectable interest in the mark; (2) Defendants used an identical or similar mark "in connection with any goods or services"; and (3) Defendants' "use is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Utah Lighthouse Ministry*, 527 F.3d at 1050; *see also 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).

Before a party can assert a trademark infringement claim, either under federal law or common law, it must show that it has a protectable interest (i.e., ownership) in the mark. *See Reno Air Racing Ass'n, Inc. v.*

*McCord*, 452 F .3d 1126, 1134 (9th Cir. 2006) ("claim of trademark infringement ... requires a trademark holder to demonstrate ownership of a valid mark (i.e., a protectable interest)"); *A & H Sportswear v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (to recover on federal trademark infringement plaintiff must show that it possesses a valid, protectable trademark).

Plaintiffs cannot establish that they have a protectable interest in the Strength Sensei name or logo mark because it was never used in commerce during Charles Poliquin's life. There is no such evidence that during Charles Poliquin's life the mark was used in commerce or reached a substantial portion of the public that might be expected to purchase the goods; on the contrary, Legacy was the first to use the mark in commerce (by advertising and selling items on the website). Ownership of a trademark requires that "the party claiming ownership be the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). *See also Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975) ("Ownership of a mark requires a combination of both appropriation and use in trade. Thus, neither conception of the mark, nor advertising alone establishes trademark rights at common law." (internal citations omitted)). The Lanham Act defines a mark as "any word, name, symbol, or device, or any combination thereof ... (A) used by a person, or (B) which a person has a bona fide intention to use in commerce . . . to identify and distinguish his or her goods [or services]" from those offered by others. 15 U.S.C. § 1127. A mark is "use[d] in commerce" when, with respect to goods, "(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce." 15 U.S.C. § 1127. As one leading treatise observes, "To acquire ownership of a trademark, one must actually use the designation as a mark in the sale of goods or services. No trademark rights accrue to someone who merely selects a designation without actual use of it in the advertising or sale of goods." 2

*McCarthy on Trademarks and Unfair Competition* § 16:11 (5th ed.) (Sep. 2019 update).

As the district court in *Dalkita* recognized, some courts have found that advertising of the mark could give rise to trademark rights, but noted: "[T]o the extent that advertising alone may satisfy the commercial 'use' requirement, it may do so only if the party's promotional activities are 'of sufficient clarity and repetition to create the required identification' and have 'reached a substantial portion of the public that might be expected to purchase the [good or] service.'" *Dalkita*, 356 F. Supp. 3d at 1138 (quoting *T.A.B. Sys. v. Pactel Teletrac*, 77 F.3d 1372, 1377 (Fed. Cir. 1996)). The *Dalkita* court stated that the use of the mark must have a "substantial impact" on the consuming public. *Id.* (quoting *T.A.B. Sys.*, 77 F.3d at 1376).

Moreover, Knockout Services, Inc. has obtained from the USPTO a certificate of registration for the mark Strength Sensei. EX. 6. Under 15 U.S.C. § 1115(a):

> Any registration issued under the Act of March 3, 1881, or the Act of February 20, 1905, or of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and <u>shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce</u> on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b), which might have been asserted if such mark had not been registered.

(Emphasis added). Citing 15 U.S.C. § 1115(a), the Supreme Court recently pointed out that "registration gives trademark owners valuable benefits," constitutes "prima facie evidence" of the mark's validity, and is "constructive notice of the registrant's claim of ownership." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2297–98 (2019). "Generally, a trademark is eligible for registration, and receipt of such benefits, if it is 'used in commerce.' *Id.* at 2298 (citing 15 U.S.C. § 1051(a)(1)). SSI could not have registered the mark because it was never used in commerce when Charles Poliquin was alive.

Plaintiffs have made no showing of any protectible interest in the mark or otherwise negate this

16

presumption of ownership of the mark by Knockout Services. The name Strength Sensei was first used by

Karin Macon when she registered and purchased the domain name strengthsensei.com. None of the items

with the Strength Sensei name or logo (Japanese characters) were ever advertised or sold during Charles

Poliquin's life. Rather, the t-shirts with the name and logo were only given away for free at classes. The first

use in commerce was in April 2019 when they were advertised and sold for the first time on the

strengthsensei.com website by Legacy. And it is uncontroverted that Knockout Services, Inc., not SSI, has

the certificate of registration for the name Strength Sensei (EX. 6) and its application for the logo mark is

pending. Plaintiffs therefore cannot show that they will prevail on a trademark infringement or unfair

competition claim under federal or common law.

Even, assuming *arguendo*, Plaintiffs could show a protectible interest in the mark, they cannot

demonstrate a likelihood of irreparable injury. A plaintiff must do more than assert a loss of control over the

trademark; it must establish that its loss of control is likely to have an adverse impact on its reputation or

customer base while this case is pending. *See, e.g., adidas America, Inc. v. Skechers USA, Inc*., 890 F.3d

747, 759-60 (9th Cir. 2018) (holding that there was no support in the record for a "finding of irreparable

harm based on [plaintiff's] loss of control theory" where plaintiff had not presented any evidence that the

general public viewed the competitor's shoe as a lower-quality brand such that confusion between

the brands would harm plaintiff's brand image); *Greenway Univ., Inc*., 2011 WL 2669174, at *6 (finding no

showing of irreparable injury where defendant had taken steps to reduce customer confusion and plaintiff

had not presented any evidence that it was losing customers as a result of defendant's infringing conduct).

### D.  There is no evidence to support a claim under the Colorado Consumer Protection Act.

In order to prove a private cause of action under the CCPA, a plaintiff must show: "(1) the

defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the

course of defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or

potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003)). The Tenth Circuit has held that "false representation" within the context of the CCPA must either "induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers. *Id.*

Contrary to Plaintiffs' claim, Defendants are not violating the CCPA by making any false representation of the affiliation of services. Rather, Legacy makes clear on its website that it is not SSI and instead is a new company intended to honor the legacy of Charles Poliquin. No consumer could be confused about this new company, its source or its affiliation. As noted above under the infringement claim, Plaintiffs have demonstrated no protectible interest in the Strength Sensei name or mark. Plaintiffs have failed to show a likelihood of success on the merits of this claim, and, more importantly, any irreparable harm that is of such imminence that justifies a preliminary injunction.

**E. There is no evidence of any unjust enrichment.**

"Unjust enrichment is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another." *Martinez v. Colo. Dep't of Human Serv.*, 97 P.3d 152, 159 (Colo.Ct.App.2003). To establish a claim for unjust enrichment, a plaintiff must demonstrate that "(1) at [his or her] expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying." *Id.*; *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1221 (10th Cir. 2004). Plaintiffs fail to identify what the benefit defendants received and how that would make it unjust for defendants to retain it without paying for it. Rather, Plaintiffs merely recite conclusory statements that Defendants obtained "confidential and trade secret documents" without identifying what this information might be. *See* Memorandum, ¶ 57. Again, Plaintiffs rely on the false claim that defendants are using the

18

"well-established social media and website accounts" without informing the Court that these sites are owned by others, not SSI. *Id; see also* EX. 1 and EX 7. In any event, Plaintiffs cannot establish any irreparable harm relating to unjust enrichment that warrants a preliminary injunction.

**F. There is no evidence of any civil theft or conversion.**

For the same reason that the claims for misappropriation of trade secrets fail (*see supra*), this claim also fails. There is no evidence that Defendants exercised control of SSI's property, any trade secrets, or otherwise permanently deprived SSI of its property or trade secrets. Instead, Plaintiffs made a thorough and complete effort to return everything to the Estate. *See* EX. 1. Again, Plaintiffs rely on the false claim that Defendants retained access to the social media and website accounts (*see* Memorandum ¶ 59), when the actual facts are that these accounts were never owned by SSI or Charles Poliquin. *See* EX. 1, EX. 7.

## CONCLUSION

Plaintiffs cannot satisfy their burden to demonstrate a clear and unequivocal right to relief to warrant the extraordinary remedy of a preliminary injunction. Plaintiffs have failed to demonstrate the most important requirement of irreparable harm. The evidence establishes that Knockout Services, Inc. (and previously Karin Macon), not SSI, purchased and at all times owned the domain name strengthsensei.com. Knockout Services, Inc. was the first to use in commerce and the first to file a trademark application for both the name and logo for Strength Sensei, and has received a certificate of registration for the name from the USPTO. EX. 6. Plaintiffs cannot show that any of SSI's property or assets have not been returned to Plaintiffs. Accordingly, Plaintiffs cannot demonstrate an injury that is "certain, great, actual and not theoretical" to establish irreparable harm to warrant an injunction. *Heideman*, 348 F.3d at1189. Nor can Plaintiffs establish likelihood of success on the merits or that the balance of equities favor their position.

Plaintiffs' motions for injunctive relief will disturb the status quo by wresting ownership of the domain name from Knockout Services, Inc. and invalidating Knockout Services, Inc.'s valid federal

trademark. It will also have a disproportionate impact on the ability of Defendants to continue their business and use their website that they purchased, control, and own.

WHEREFORE, Defendants Strength Sensei Legacy Corp., Knockout Services, Inc., Scott Macon, and Karin Macon-Luetzer respectfully request that the Court deny Plaintiffs' motions for temporary restraining order [ECF No. 2] and motion for preliminary injunction [ECF No. 3] and enter such other relief as the Court deems just and proper.

Respectfully submitted this 3rd day of December 2019.

By: *s/ Erik R. Neusch*
Erik R. Neusch
Neusch Law, LLC
3570 E. 12th Avenue
Denver, Colorado 80206
Tel: 303-656-9823
erik@neuschlaw.com

*Attorney for Defendants Strength Sensei Legacy, Inc., Knockout Services, Inc., Scott Macon, and Karin Macon-Luetzer*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of December 2019, I electronically filed the foregoing **RESPONSE IN OPPOSITION TO MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Reid J. Elkus
Kathryn Sheely
ELKUS AND SISSON P.C.
7100 E Belleview Ave. Suite 101
Greenwood Village, CO 80111
(303) 567-7981
relkus@elkusandsisson.com
ksheely@elkusandsisson.com
**Attorneys for Plaintiffs**

*s/    Erik R. Neusch*